Nelson CARDONA, Plaintiff,

v.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Nydia Gonzalez, Max Belin and Jim Radulski, Defendants.

No. 89–0843–CIV.

United States District Court, S.D. Florida.

Aug. 8, 1989.

Amlong & Amlong, William R. Amlong, Fort Lauderdale, Fla., for plaintiff.

Jesse S. Hogg and Madeline Buchanan Auerbach, Coral Gables, Fla., for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

JAMES LAWRENCE KING, Chief Judge.

Before the court is the defendants' motion to dismiss the plaintiff's claim under 42 U.S.C. § 1981. Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. After careful review of the defendants' motion, the plaintiff's response and the reply thereto, and the complaint, and being otherwise fully advised, the court denies the motion to dismiss.

In his complaint, the plaintiff alleges that he was discriminated against because of his race by the management employees of American Express Travel Related Services Co., Inc. (American Express) during the course of his employment with American Express. The plaintiff, a Colombian by national origin, seeks declaratory and injunctive relief and damages, claiming that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, et seq.) and 42 U.S.C. § 1981. The plaintiff alleges that management employees discriminated against him by passing him over for promotion in favor of less qualified employees of Cuban national origin, and subsequently fired him for voicing his opposition to this allegedly discriminatory policy. The plaintiff's claim is stated in three counts: Count I seeks injunctive and declaratory relief and damages for discrimination under Title VII; Count II seeks injunctive and declaratory relief, including reinstatement to his former position, and damages under 42 U.S.C. § 1981; and Count III seeks actual and exemplary damages under § 1981.

The defendants, in their motion to dismiss, raise two issues, both pertaining to Counts II and III. First, the defendants claim that as a Colombian, the plaintiff is not a member of a protected race under § 1981, but rather is a member of the larger, protected group of Latins or Hispanics.[1] Defendants argue that the plaintiff alleges that he was discriminated against in favor of other members of the same race, that is, Latins who happen to be of Cuban national origin rather than Colombian, and that therefore he has failed to state a claim under § 1981.

Second, the defendants assert that the plaintiff has failed to state a claim in light of *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The substance of this ground for dismissal is that the plaintiff has not specifically alleged that he was denied any post-employment opportunity which would have changed the nature of his contractual relationship with American Express.

*Race Discrimination Under § 1981*

 The plaintiff alleges in Counts II and III of his complaint that he was discriminated against because he is a Colombian by national origin and by ancestry and/or ethnic characteristics. The United States Supreme Court, in *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), held that while a claim of discrimination based solely on the place or nation of the claimant's origin is not sufficient to state a claim under

1. The defendants use the denominizations Latins and Hispanics to describe the members of a single race. The Supreme Court in *St. Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (discussed *infra*), uses only the term Latin in its discussion of the Congressional intent of § 1981. *Id.* 107 S.Ct. at 2027. Without a judgment as to which term is more appropriate to describe the Spanish speaking peoples of the Western Hemisphere, and without determining whether the terms Latin and Hispanic actually describe separate racial groups, the court has followed the lead of Congress and the Supreme Court and used "Latin" to include the entire group.

§ 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." 107 S.Ct. at 2028. Among the ethnic groups noted by the Court to be distinct races in its review of the legislative history of § 1981 are Latins, Mexicans, and Spanish. *Id.* at 2027. Also distinguished as separate races because of their ethnicity are Finns, Norwegians, and Swedes, who are traditionally considered to be members of the Scandinavian races. *Id.* Other ethnic groups are given separate status under § 1981 merely because of their country of origin and the ethnicity associated with people from those countries.

The defendants claim that Colombians and Cubans are members of the Latin race, and that therefore § 1981 protections do not apply to discrimination between the two groups. The court is not persuaded by this argument, nor does the it find that to be the Supreme Court's interpretation of the intent of § 1981.

The plaintiff claims that he was discriminated against because of his Colombian ancestry or ethnic background, as well as his national origin. Merely because he is a member of a larger group of Spanish speaking peoples that have come to be known as Latins does not remove from the plaintiff his ethnicity as a Colombian. Much as the Scandinavian peoples of Norway, Sweden and Finland retain their status as members of separate races because of their ethnicity, the people from the Spanish speaking countries of the Caribbean Basin, Central and South America all have unique ethnic characteristics that distinguish them from each other as separate races within the intent of § 1981. Just as Scandinavians from Finland may be discriminated against in favor of Scandinavians from Sweden, so too are Latins from one country, who have distinct ethnic and cultural characteristics, susceptible to being discriminated against in favor of Latins from another country. Language itself is not dispositive in defining ethnic groups: the Supreme Court distinguishes between Spanish speaking Mexicans, Spaniards and Latins; indeed, within the Spanish speaking Latin superset are Brazilians, who speak Portuguese. Accordingly, the court holds that a person of Colombian ancestry who claims that because of his ethnic background he was discriminated against in favor of employees of Cuban ancestry, who have little in common with Colombians other than the Spanish language as the tongue of their ancestral home, has stated a claim under § 1981.

*Discrimination in Post Employment Promotions Under § 1981*

■ Notwithstanding the plaintiff's status as a member of a recognized racial group entitled to protection under § 1981, the defendants move to dismiss his complaint on the grounds that § 1981 does not apply to post employment discriminatory conduct practiced by a private employer. The defendants rely on the Supreme Court's decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), arguing that the plaintiff fails to state a claim because he does not specifically allege that the defendants denied him a promotion which would have resulted in a new contract between the plaintiff and the defendant.

The Court in *Patterson* took exception to the Court of Appeals' pronouncement that claims of racial discrimination in making promotions " 'fall easily within § 1981's protection.' " *Id.* at 109 S.Ct. 2377. Rather, the Court held a promotion discrimination claim to be actionable only where it stems from the denial of an opportunity for an employee to enter into a new contract with the employer. Whether a new contract opportunity exists depends on whether "the promotion rises to the level of an opportunity for a new and distinct relationship between the employee and the employer...." *Id.*

The Court in *Patterson* did not hold that to state a claim under § 1981 a plaintiff must specifically plead that the discriminatory promotion practices of an employer denied the employee an opportunity to enter into a new contract with the employer.

Rather, the Court held that it was error for the District Court to instruct the jury that the employee alleging discriminatory promotion practices need only show that she was better qualified than a white applicant who got the job, without requiring a showing of intentional discrimination. *Id.* at 2378. The plaintiff Nelson Cardona has alleged that he was denied promotions through the intentional racial discrimination of the defendants. He has not stated the nature of those opportunities, but this court does not believe that *Patterson* requires him to so specifically plead. Nor does this court believe that it is required to dismiss the plaintiff's claim without giving him the opportunity to develop his claim and carry his burden of proving that he was discriminatorily denied new contract opportunities.

### CONCLUSION

The plaintiff's claim can hardly be said to be frivolous as pleaded. On its face, the complaint alleges intentional racial discrimination by the defendant against the plaintiff, who is a member of an ethnic group distinct from those employees whom he claims received preferential treatment and promotions at his expense. It is readily conceivable that the plaintiff could develop and show facts which would prove that he was intentionally discriminated against because of his race, that as a result of this discrimination he was denied promotions, and that the opportunities he was denied would have resulted in new contracts with the defendant employer. Therefore, this court finds that the plaintiff has stated a claim for which relief may be granted under § 1981. Accordingly, it is

ORDERED and ADJUDGED that the defendants' motion to dismiss be, and the same is hereby DENIED.

DONE and ORDERED.